Victor A. Sahn (CA Bar No. 97299)
   vsahn@sulmeyerlaw.com
Jason D. Balitzer (CA Bar No. 244537)
   jbalitzer@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for R & S Antiques, Inc., Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-bk-23986-WB |
| R & S ANTIQUES, INC., | Chapter 11 |
| Debtor. | **NOTICE OF MOTION AND MOTION FOR ORDER: (1) APPROVING SALE(S) OF ASSETS PURCHASED AT AUCTION; (2) DETERMINING THAT PURCHASER(S) IS/ARE GOOD FAITH PURCHASER(S); AND (3) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF KOROSH SOLTANI IN SUPPORT THEREOF** |
| | Date:       August 16, 2018 |
| | Time:       10:00 a.m. |
| | Place:      U.S. Bankruptcy Court |
| | Courtroom 1375 |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

JDB\ 2628218.1

1

2

# TABLE OF CONTENTS

I. PREFATORY STATEMENT ......................................................................................................... 4

II. BACKGROUND ........................................................................................................................... 5

   A.   Events Precipitating The Instant Bankruptcy ................................................................ 5

      1.   Decline in the Debtor's Business ............................................................................... 5

      2.   Dispute with Sloane Two ............................................................................................ 5

      3.   The Sloane Two Civil Action ..................................................................................... 6

   B.   The Chapter 11 Case ...................................................................................................... 6

      1.   Case Commencement .................................................................................................. 6

      2.   Rejection of the Lease and Store Closing Sale .......................................................... 6

      3.   Post-Lease Rejection Activities .................................................................................. 7

      4.   The Order To Show Cause and Bidding Procedures Order ........................................ 7

III. THE AUCTION PROCESS .......................................................................................................... 8

IV. ARGUMENT ............................................................................................................................... 10

   A.   The Court Should Approve The Sale(s) Under 11 U.S.C. § 363 ................................ 10

      1.   Legal Standard .......................................................................................................... 10

      2.   The Sale is Supported by a Sound Business Justification ........................................ 10

      3.   Notice of the Sale will have been Reasonable and Adequate ................................... 11

   B.   The Court Should Make A Good Faith Finding Under 11 U.S.C. § 363(m) ............... 11

      1.   Legal Standard .......................................................................................................... 11

      2.   The Sale is Proposed in Good Faith .......................................................................... 12

   C.   The Court Should Waive the Fourteen Day Stay Prescribed by FRBP 6004(h) ......... 12

V. CONCLUSION ........................................................................................................................... 13

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

JDB\ 2628218.1

# **TABLE OF AUTHORITIES**

**Cases**

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) .................................................................................................................................... 10

*In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986)................................... 10, 12

*In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) ..................................... 10

*In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987)......................................................................................................................................... 10

*In re M Capital Corp.*, 290 B.R. 743 (9th Cir. BAP 2003)............................................................. 12

*In re Pine Coast Enterprise, Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ................................. 12

*Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990)...................... 12

*Titusville Country Club v. PennBank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991)........................................................................................................................... 10

**Statutes**

11 U.S.C. § 363 .......................................................................................................................... 1, 10

11 U.S.C. § 363(b) .......................................................................................................................... 10

11 U.S.C. § 363(m) .............................................................................................................. 1, 2, 11, 12

California Civil Code § 1951.4 ......................................................................................................... 6

**Rules**

Federal Rule of Bankruptcy Procedure 6004(h)................................................................... 1, 2, 12

Local Bankruptcy Rule 9013-1(f) ..................................................................................................... 2

Local Bankruptcy Rule 9013-1(h)..................................................................................................... 2

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER INTERESTED PARTIES:**

      **PLEASE TAKE NOTICE** that on August 16, 2018 at 10:00 a.m. in Courtroom 1375 of the above-entitled Court, before the Honorable Julia W. Brand, United States Bankruptcy Judge, R&S Antiques, Inc., a California corporation, debtor and debtor in possession in the above-captioned case (the "Debtor"), will, and hereby does, move (the "Motion") this Court for entry of an order (the "Sale Order"):

      1.      Approving the sale or sales of its assets (the "Sale" or "Sales") to the successful bidder(s) (the "Buyer" or "Buyers") at the auction (the "Auction") the Debtor will hold on August 11, 2018, on to the terms and conditions described in the form *Asset Purchase Agreement* (the "Purchase Agreement")[1] that is attached hereto as **Exhibit 1**;

      2.      Authorizing the Debtor to execute any and all documents necessary to consummate the Sale(s).

      3.      Finding the Buyer (or Buyers) to be a bona fide good faith purchaser under 11 U.S.C. § 363(m); and

      4.      Waiving the fourteen (14) day stay prescribed by Federal Rule of Bankruptcy Procedure 6004(h).

      **PLEASE TAKE FURTHER NOTICE** that this Motion is brought in accordance with 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 6004, and is made on the ground that the Debtor has determined that the Sale (or Sales) will allow the Debtor to liquidate its remaining inventory and thereafter resolve the instant case through a duly-noticed motion for structured dismissal.

/ / /

---

[1] Prior to or at the Auction, each bidder will need to execute a version of the Purchase Agreement that specifically describes the particular terms and conditions of their proposed purchase. True and correct copies of the executed Purchase Agreements will be provided to the Court as part of a supplement that the Debtor will file in advance of the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on the Memorandum of Points and Authorities, the Declaration of Korosh Soltani, any exhibit(s) attached hereto, the Supplement that will be filed prior to the hearing and any declaration(s) and exhibit(s) thereto, all judicially noticeable facts, all other admissible evidence properly before the Court, and any arguments and/or testimony to be presented at the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any party opposing the relief requested in the Motion must file and serve a written opposition no later than fourteen (14) days prior to the hearing on the Motion. Copies of any timely filed opposition must be served upon (i) the Debtor, through its counsel of record, **Sulmeyer**Kupetz, A Professional Corporation, 333 South Hope Street, 35th Floor, Los Angeles, CA 90071, Attention: Victor A. Sahn, Esq./Jason D. Balitzer, Esq., Fax (213) 629-4520, and (ii) the Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017, Fax (213) 894-2603. Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve a response in accordance with the Local Bankruptcy Rules may be deemed by the Bankruptcy Court to be consent to the granting of the relief requested in the Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (i) authorizing the Sale (or Sales) to the Buyer (or Buyers) on the terms and conditions set forth in the Purchase Agreement; (ii) authorizing the Debtor to execute and deliver all documents necessary to effectuate each Sale; (iii) finding that each Buyer is a bona fide good faith purchaser under 11 U.S.C. § 363(m); (iv) waiving the fourteen (14) day stay prescribed by Federal Rule of Bankruptcy Procedures 6004(h); and (v) providing for such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    DATED:  July 26, 2018                 Respectfully submitted,

2                                          **Sulmeyer**Kupetz
                                           A Professional Corporation
3

4

5                                          By:    _____/s/ Victor A. Sahn_____
                                                  Victor A. Sahn
6                                                 Jason D. Balitzer
                                                  Attorneys for R & S Antiques, Inc., Debtor and
7                                                 Debtor in Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES

The Debtor hereby submits the following Memorandum of Points and Authorities in support of the foregoing motion (the "Motion").[2]

### I.

## PREFATORY STATEMENT

This Motion is the culmination of the Debtor's efforts administration of its estate. In November 2017, the Debtor, facing the potential attachment of the inventory which serves as the lifeblood of its business, filed a Chapter 11 petition and commenced this case so as to, among other things, preserve the value of these important assets for the benefit of its creditor body as a whole. The Debtor had hoped that its reorganization proceeding would spur negotiations between it and its landlord over the oppressive terms of its commercial lease, thereby allowing the Debtor to emerge from bankruptcy with a sustainable operation well into the future. To that end, its initial efforts were directed at maintaining operations at its retail space while attempting to reach new lease terms with its landlord. Unfortunately, this resolution proved elusive, and the Debtor was forced to reject its lease and cease operating at the retail level at the end of March 2018. Since then, the Debtor has been in possession of certain inventory that was in its possession when it vacated its store location, but without an ongoing operation has lacked the means to administer it for the benefit of its estate.

The sale process described in the Motion both resolves this issue and presents the Debtor with a clear path to resolving this case. Since the Debtor cannot sell its inventory through an ongoing store operation, it proposes to liquidate it all through a widely advertised public auction wherein potential purchasers can bid on whole segments of the Debtor's remaining inventory. As discussed more fully herein, the Debtor believes that this process will result in it obtaining the highest and best price for its remaining property. The Debtor already conducted a two-month long store-closing sale prior to the rejection of its commercial lease and believes that it has already sold off the items that would most interest individual purchasers. The Debtor believes that its remaining inventory, i.e., that which

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

consumers did not purchase during the store closing sale, is most prized by other retailers who would be interested in purchasing these assets for their potential resale value. The auction process for which this Motion seeks approval is designed to maximize bids from such purchasers.

Liquidation of the remaining inventory is the final prerequisite to the resolution of this proceeding. After consummating the sale(s) described in this Motion, the Debtor will be in a position to file a motion for structured dismissal of this case. In other words, approval of this motion will not only allow the Debtor to generate cash for the benefit its creditors; it will also serve judicial economy by enabling the Debtor to commence winding up this case. For these reasons and others set forth more fully herein, the Debtor respectfully submits that the Court should grant the Motion, approve the sale(s) described in the Motion, and provide for such other related relief as is just and appropriate.

## II.

## BACKGROUND

**A.    Events Precipitating The Instant Bankruptcy**

**1.    Decline in the Debtor's Business**

The Debtor commenced this case on November 13, 2017 (the "Petition Date"). Prior to the Petition Date, and up through March 31, 2018, the Debtor operated a high-end giftware store (the "Business") at 262 N. Rodeo Drive, Beverly Hills, California (the "Store Location"). In the years leading up the Petition Date, the Business struggled with profitability, and in fact needed to take advances and loans from its principal, Rahim Soltani ("Rahim"), in order to meet its operating expenses. These issues were exacerbated by the general market declines that have been suffered by "brick and mortar" retail businesses in recent years.

**2.    Dispute with Sloane Two**

One of the Debtor's most significant high-cost items was its monthly rent under its commercial lease for the Store Location (the "Lease"). For the first eight years under the Lease, the Debtor timely met this monthly obligation, but this run ended in July 2017. Prior to the cessation of its rent payments, the Debtor attempted to renegotiated new Lease terms with its landlord, Sloane Two Rodeo, LLC ("Sloane Two"), but was unable to do so.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

### 3.    The Sloane Two Civil Action

In July 2017, Sloane Two commenced a civil action against the Debtor to recover damages flowing from the Debtor's cessation of rent payments (the "Civil Action").  Additionally, it elected to treat the Lease as still in force and effect pursuant to Section 1951.4 of the California Civil Code and sued for, among other things, the unpaid rent amount due for the remaining term of the Lease.  Sloane Two thereafter attempted to obtain a right to attach order, but prior to the hearing on Sloane Two's application, the Debtor filed its bankruptcy petition and commenced the instant case.

## B.    The Chapter 11 Case

### 1.    Case Commencement

The Debtor filed its Chapter 11 petition on November 13, 2017.  The Debtor thereafter filed a number of "first day" motions, including a motion for approval of secured post-petition financing [Dkt. No. 20] (the "Financing Motion") which enabled the Debtor to borrow funds from Panache Productions, Inc. ("Panache") and use those funds in furtherance of its reorganization efforts.  The Court granted the Financing Motion, and for a time the Debtor used these funds to make, among other things, certain post-petition rent payments that become due and owing under the Lease.  The Debtor operated its Business in the normal course during the "holiday season" months of November and December 2018.

### 2.    Rejection of the Lease and Store Closing Sale

The Debtor had initially hoped that it would be able to renegotiate the terms of the Lease with Sloane Two, but in the months following the commencement of this case it became apparent that Sloane Two and the Debtor were too far apart in their proposals.  Moreover, the Business did not perform as well as anticipated during the holiday season months.  In early January 2018, the Debtor filed motions to reject the Lease [Dkt. No. 72] (the "Lease Rejection Motion") and for authority to conduct a store closing sale at the Store Location up through the date of rejection [Dkt. No. 80] (the "Store Closing Motion").

The Court entered an order granting the Store Closing Motion on January 30, 2018.  The Lease Rejection Motion was continued until March 2018 so that negotiations between the Debtor and Sloane Two could proceed further.  On March 8, 2018, after negotiations on the Lease had terminated, the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Court entered an order granting the Lease Rejection Motion and deeming the Lease rejected as of

2  March 31, 2018.  The Debtor conducted its store closing sale through the last week of March and then

3  vacated the Store Location by March 31, 2018.

4        **3.**      **Post-Lease Rejection Activities**

5        The Debtor utilized some of the funds generated by the store closing sale to pay off Panache.

6  Consequently, it has no secured creditors.  At the conclusion of the store closing sale, the Debtor was

7  left with remaining inventory (the "Inventory") valued at approximately $696,000 at cost.  The four

8  batches of the Inventory are separately valued as follows: (i) Jewelry is approximately $86,000 at cost;

9  (ii) Watches are approximately $315,000 at cost; (iii) Antiques are approximately $190,000 at cost;

10  and (iv) Gift Items are approximately $105,000 at cost.

11        After the Debtor left the Store Location, the Inventory was moved to one of two locations: (i)

12  Rahim's residence (in the case of high-end items such as jewelry or watches, for insurance purposes),

13  or (ii) a storage warehouse.  Throughout the month of April and into May 2018, the Debtor examined

14  potential alternative locations at which to reopen the Business, but no workable premises were

15  discovered.  At the same time, the Debtor evaluated other options such as the conducting of a

16  "warehouse sale" of the remaining Inventory.

17        **4.**      **The Order To Show Cause and Bidding Procedures Order**

18        The Debtor was still examining its options for bringing this case to a close when the Court

19  issued an order to show cause as to why the instant case should not be dismissed or converted to

20  Chapter 7 [Dkt. No. 139] (the "OSC").  Following the entry of the OSC, the Debtor determined that

21  the most expeditious manner to appropriately administer its remaining assets is a liquidation during

22  which interested purchasers could bid upon the Inventory, either in toto or in substantial part, as

23  described herein.

24        To that end, the Debtor responded to the OSC by, among other things, filing its *Notice Of*

25  *Motion And Motion For Entry Of Order Establishing Bidding And Sale Procedures* [Dkt. No. 143]

26  (the "Bidding Procedures Motion"), pursuant to which it sought approval of the auction and bid

27  procedures that the Debtor will use in connection with the auction process (the "Bidding Procedures").

28  Following a hearing on June 14, 2018, the Court approved the Bidding Procedures Motion and

vacated the OSC. Among other things, the order [Dkt. No. 148] approving the Bidding Procedures Motion (the "Bidding Procedures Order") set the above-captioned date and time for the hearing on the instant Motion.

Following the entry of the Bidding Procedures Order, the Debtor has moved forward with implementing the auction process described in the Bidding Procedures Motion and herein. This Motion represents the culmination of those efforts.

**III.**

**THE AUCTION PROCESS**

By the Auction (as that term is defined herein), the Debtor will liquidate the remaining Inventory on the following terms and conditions:

- The Inventory is to be divided into four separate "batches:" (i) Watches; (ii) Jewelry; (iii) Antiques;[3] and (iv) Gift Items.[4]

- On August 11, 2018, from 11:00 a.m. to 12:00 p.m., the Debtor will conduct an auction for the Inventory (the "Auction") at 141 S. El Camino Drive, Suite 210, Beverly Hills, CA 90212. The Auction will be open to the public.

- Prior to the Auction, the Debtor will make the Inventory available for inspection to potential purchasers. The Debtor will hold an open preview of the Inventory at 141 S. El Camino Drive, Suite 210, Beverly Hills, CA 90212 on August 8, 2018 at 10:00 a.m. to 12:00 p.m. (the "Preview"). Additionally, interested parties that cannot attend the Preview or otherwise wish to see the Inventory on a different date and time may arrange this inspection with the Debtor's representatives directly by contacting the Debtor either by phone (310-273-6660 or 1-800-367-4355) or email (info@davidorgell.com).

- The Debtor is advertising the Auction and the Preview. Advertisements are being placed with the Court's website; the National Association of Bankruptcy Trustees; Courtdrive.com; the Danning, Gill, Diamond & Kollitz, LLP website; the Los Angeles Times; and NationalJeweler.com. A true and correct copy of the language that has been used to advertise the Auction and the Preview is attached hereto as **Exhibit 2**.

- Prospective purchasers may bid on the Inventory as a whole or, alternatively, any one or more of the "batches." Stated differently, a purchaser can bid on (i) all of the Inventory or (ii) all items in a particular batch or batches (e.g., all Watches, all

---

[3] "Antiques" constitute items that derive their intrinsic value from their age.

[4] "Gift Items" are items which are not otherwise considered Watches, Jewelry, or Antiques.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Antiques, all Jewelry, or all Gift Items).  Bids may be made at any time prior to, but no later than, the conclusion of the Auction.

- The minimum bids for the Inventory will be as follows: $140,000 for all of the Inventory or, if the proposed purchaser is interested in bidding on individual batches, (i) $17,000 for all Jewelry, (ii) $63,000 for all Watches, (iii) $38,000 for all Antiques, or (iv) $21,000 for all Gift Items.

- In addition to the foregoing Inventory, R&S will present for sale a large disassembled Waterford crystal water fountain, which has been in a number of storage boxes for many years and is an item separate from the Watches, Jewelry, Antiques, and Giftware described above.  There is no minimum bid for the disassembled Waterford crystal water fountain.

- The Inventory will be sold on an "as is" / "where is" basis, with no representations or warranties whatsoever.  It will be sold subject to existing liens, encumbrances, and restrictions, though the Debtor is not aware of any such liens, encumbrances, or restrictions.  All due diligence must be completed by the prospective purchaser prior to the submission of its bid.

- Concurrent with the submission of its bid, each prospective purchaser must execute an asset purchase agreement in substantially the same form as the *Asset Purchase Agreement* (the "Form APA") that is attached hereto as **Exhibit 1**.  The purchaser must also deliver by cashier's check a deposit (the "Deposit") in an amount of not less than 10% of the minimum bid required for the asset(s) upon which such prospective purchaser is bidding (i.e., $12,200 for all Inventory; $2,000 for Jewelry; $6,300 for Watches; $1,400 for Antiques; $2,500 for Gift Items).  The Deposit will be held in the client trust account of **Sulmeyer**Kupetz, A Professional Corporation, general bankruptcy counsel to the Debtor, pending approval by the Court of the purchase and sale to which the Deposit relates.  The Deposit will be refundable only in the event of the following: (i) another bidder submits a higher and better bid for the same asset(s), in which case the Deposit will be returned immediately after the Auction (provided, however, that any prospective bidder may elect to serve as a "backup bidder" in case the sale to the winning bidder is not approved, in which case the Deposit will be retained until the hearing on the Motion; (ii) the Court does not approve the sale; or (iii) the Debtor is unable to transfer marketable title within ten (10) business days of entry of the order approving the sale (or such other later date as the parties may agree).

- Following the completion of the Auction but prior to the hearing on this Motion, the Debtor will file a supplement to the Motion (the "Supplement") which (i) lists the bid(s) made at the Auction, (ii) discloses the identity/ies of any bidder(s), and (iii) states the dollar amount of each bid.  Approval of the winning bid(s) will be determined at the hearing on the Motion, but in the Supplement the Debtor may recommend that the Court approve certain bid(s).

- Following the entry of the Sale Order(s), the Debtor will close such sale(s) as described in the Form APA.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**IV.**

**ARGUMENT**

**A.    The Court Should Approve The Sale(s) Under 11 U.S.C. § 363**

**1.    Legal Standard**

Section 363 of the Bankruptcy Code provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  To approve the use, sale or lease of property out of the ordinary course of business, this Court must find "some articulated business justification."  *See, e.g., Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting articulated business justification test of *Lionel Corp.*, and requiring showing of good faith); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that Third Circuit adopted "sound business purpose" after *Abbott Dairies* decision); *Titusville Country Club v. PennBank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

**2.    The Sale is Supported by a Sound Business Justification**

The Sale of the Inventory is supported by a sound business justification.  The Debtor possesses valuable Inventory but has no storefront from which to sell it as part of an ongoing operation. Liquidating the items piecemeal is unlikely to produce a significant return as the Debtor already conducted its "store closing sale" and the items that comprise the remaining Inventory are those which did not sell during the "store closing" liquidation.  The Debtor believes that the value of the remaining Inventory is largely derived from its potential resale value and, to that end, will be maximized if it sold either in whole or in large batches to businesses that operate in the Debtor's industry and may be interested in reselling these items to their own customers.  The Auction procedure contemplated by this Motion is designed to effect this very transaction.  Additionally, because the Sale is subject to bid procedures and an auction, the price ultimately received as a result of a bidding process which tests the market in order to ensure a fair and reasonable sale price.

3. <u>**Notice of the Sale will have been Reasonable and Adequate**</u>

The Debtor is advertising the Auction in both national and local databases frequented by parties interested in purchasing assets in bankruptcy sales, as well as the Los Angeles Times, a nonbankruptcy source, and NationalJeweler.com, a website specifically devoted to news affecting jewelry professionals.[5]  Moreover, the advertisement, which is attached hereto as <u>**Exhibit 2**</u>, is specifically designed to afford prospective purchasers a meaningful opportunity to evaluate the Inventory and prepare to submit any bids that they deem appropriate.  It provides far more information than just the date and time of the Auction.  Among other things, it contains a hyperlink to a workbook which contains a complete list of the Inventory, broken down into the various "batches" for the convenience of viewers who may be only interested in certain batches.  It also contains a link to pictures of the Jewelry and the Watches.  Further, it has a hyperlink to the Form APA, which allows potential purchasers an opportunity to meaningfully consider its content well before the Auction takes place.  Perhaps most importantly, it provides each reader with contact information for the Debtor's representatives so that, to the extent any potential purchaser has questions or wishes to examine the Inventory outside of the Preview date, such purchaser's inquiries can be resolved prior to the Auction. It is but one more component of the good faith manner in which the Debtor has presented and executed this sale process.

B. <u>**The Court Should Make A Good Faith Finding Under 11 U.S.C. § 363(m)**</u>

1. <u>**Legal Standard**</u>

Section 363(m) of the Bankruptcy Code authorizes the Court to make a finding that a buyer is a good faith purchaser.  A good faith purchaser of property is protected from the effects of reversal of the order authorizing the sale as long as the trial court finds that the purchaser acted in good faith and the aggrieved party fails to obtain a stay of the sale order.  Although the Bankruptcy Code does not define the term "good faith," courts have provided guidance as to the appropriate factors to consider. In essence, the purpose of Section 363(m) is to disable courts from backtracking on promises with

---

[5] A true and correct copy of the webpage on National Jeweler's website pertaining to its background is attached hereto as <u>**Exhibit 3**</u>.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  respect to bankruptcy sales in the absence of bad faith.  *Kham and Nate's Shoes No. 2 v. First Bank*,

2  908 F.2d 1351, 1355 (7th Cir. 1990).  Generally speaking, the requirement that a purchaser act in good

3  faith speaks to the integrity of the purchaser's conduct in the course of the sale proceeding and focuses

4  primarily on the disclosure of all material sale terms and the absence of fraud or collusion. *See In re*

5  *Pine Coast Enterprise, Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992); *In re Abbotts Dairies of*

6  *Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

7          **2.     The Sale is Proposed in Good Faith**

8          The Court should deem any sale made in connection with the Auction should as having been

9  made in good faith.  Since the Inventory is being sold by way of an Auction, the ultimate purchase

10  price of the Inventory will have been tested by the market.  Furthermore, the Debtor will take

11  meaningful steps to ensure public awareness of the Auction.  Advertisements are being placed in both

12  local sources (LA Times, USBC Central District and DGDK websites) and national sources (NABT,

13  Courtdrive.com, NationalJeweler.com).  The Debtor will hold the Preview so that potential purchasers

14  can evaluate the Inventory and still have time, prior to the Auction, to prepare their bids.  To the

15  extent that party cannot attend the Preview, the Debtor will arrange for private viewings.  Moreover,

16  the Form APA was drafted with an eye toward fairness and impartiality, and cannot be modified to

17  provide any purchaser with a unique "sweetheart" deal.  In short, multiple reasons exist to support a

18  finding of good faith.  Thus, pursuant to Section 363(m), the Court should find that any purchaser

19  thereunder is entitled to good faith protection of Bankruptcy Code Section 363(m).  *See In re M*

20  *Capital Corp.*, 290 B.R. 743 (9th Cir. BAP 2003) (court may not make a finding of good faith in the

21  absence of evidence, but may make such a finding of appropriate evidence is presented).

22  **C.     The Court Should Waive the Fourteen Day Stay Prescribed by FRBP 6004(h)**

23          Under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, an order authorizing the

24  sale of property, other than cash collateral, is stayed until expiration of fourteen (14) days after the

25  entry of the order unless the Court orders otherwise.  In this case, the liquidation of the Inventory is

26  the final prerequisite to the dismissal of this case.  The Debtor therefore respectfully submits that there

27  is cause to waive the fourteen day stay prescribed by Rule 6004(h) because a waiver of the stay period

28  will expedite the consummation of the sale and, consequently, the resolution of this case.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**V.**

## **CONCLUSION**

Based on the foregoing, the Debtor respectfully requests that the Motion be granted in all respects, and for such other and further relief as the Court deems just and proper under the circumstances.

DATED:  July 26, 2018                                   Respectfully submitted,

**Sulmeyer**Kupetz
A Professional Corporation


By:        /s/ Victor A. Sahn
_____
Victor A. Sahn
Jason D. Balitzer
Attorneys for R & S Antiques, Inc., Debtor and
Debtor in Possession

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# DECLARATION OF KOROSH SOLTANI[6]

I, Korosh Soltani, declare as follows:

1.      I am an individual above the age of eighteen.  Except as otherwise indicated, all statements made herein are based on my personal knowledge or my review of relevant documents.  If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2.      I am the Vice President of R & S Antiques, Inc. (the "Debtor") and am authorized to submit this declaration on its behalf. I have been employed by the Debtor for 20 years.  My responsibilities include sales, handling of personnel, purchasing, limited supervision of accounting functions, and working along with Rahim Soltani (who is my father) to operate the Debtor's business. I am familiar with the Debtor's business, its operations and its personnel.

3.      The Debtor commenced this reorganization case on November 13, 2017 (the "Petition Date").  Prior to the Petition Date, and up through March 31, 2018, the Debtor operated a high-end giftware store (the "Business") at 262 N. Rodeo Drive, Beverly Hills, California (the "Store Location").  In the years leading up the Petition Date, the Business struggled with profitability, and in fact needed to take advances and loans from its principal, Rahim Soltani ("Rahim"), in order to meet its operating expenses.  These issues were exacerbated by the general market declines that have been suffered by "brick and mortar" retail businesses in recent years.

4.      One of the Debtor's most significant high-cost items was its monthly rent under its commercial lease for the Store Location (the "Lease").  For the first eight years under the Lease, the Debtor timely met this monthly obligation, but this run ended in July 2017.  Prior to the cessation of its rent payments, the Debtor attempted to renegotiated new Lease terms with its landlord, Sloane Two Rodeo, LLC ("Sloane Two"), but was unable to do so.

5.      In July 2017, Sloane Two commenced a civil action against the Debtor to recover damages flowing from the Debtor's cessation of rent payments (the "Civil Action").  Additionally, it

---

[6] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the foregoing Motion and Memorandum of Points and Authorities.

1    elected to treat the Lease as still in force and effect pursuant to Section 1951.4 of the California Civil

2    Code and sued for, among other things, the unpaid rent amount due for the remaining term of the

3    Lease.  Sloane Two thereafter attempted to obtain a right to attach order, but prior to the hearing on

4    Sloane Two's application, the Debtor filed its bankruptcy petition and commenced the instant case.

5          6.      The Debtor filed its Chapter 11 petition on November 13, 2017.  The Debtor thereafter

6    filed a number of "first day" motions, including a motion for approval of secured post-petition

7    financing [Dkt. No. 20] (the "<u>Financing Motion</u>") which enabled the Debtor to borrow funds from

8    Panache Productions, Inc. ("<u>Panache</u>") and use those funds in furtherance of its reorganization efforts.

9    The Court granted the Financing Motion, and for a time the Debtor used these funds to make, among

10   other things, certain post-petition rent payments that become due and owing under the Lease.  The

11   Debtor operated its Business in the normal course during the "holiday season" months of November

12   and December 2018.

13         7.      The Debtor had initially hoped that it would be able to renegotiate the terms of the

14   Lease with Sloane Two, but in the months following the commencement of this case it became

15   apparent that Sloane Two and the Debtor were too far apart in their proposals.  Moreover, the

16   Business did not perform as well as anticipated during the holiday season months.  In early January

17   2018, the Debtor filed motions to reject the Lease [Dkt. No. 72] (the "<u>Lease Rejection Motion</u>") and

18   for authority to conduct a store closing sale at the Store Location up through the date of rejection [Dkt.

19   No. 80] (the "<u>Store Closing Motion</u>").

20         8.      The Court entered an order granting the Store Closing Motion on January 30, 2018.

21   The Lease Rejection Motion was continued until March 2018 so that negotiations between the Debtor

22   and Sloane Two could proceed further.  On March 8, 2018, after negotiations on the Lease had

23   terminated, the Court entered an order granting the Lease Rejection Motion and deeming the Lease

24   rejected as of March 31, 2018.  The Debtor conducted its store closing sale through the last week of

25   March and then vacated the Store Location by March 31, 2018.

26         9.      The Debtor utilized some of the funds generated by the store closing sale to pay off

27   Panache.  Consequently, it has no secured creditors.  At the conclusion of the store closing sale, the

28   Debtor was left with remaining inventory (the "<u>Inventory</u>") valued at approximately $696,000 at cost.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

The four batches of the Inventory are separately valued as follows: (i) Jewelry is approximately $86,000 at cost; (ii) Watches are approximately $315,000 at cost; (iii) Antiques are approximately $190,000 at cost; and (iv) Gift Items are approximately $105,000 at cost.

10.    After the Debtor left the Store Location, the Inventory was moved to one of two locations: (i) Rahim's residence (in the case of high-end items such as jewelry or watches, for insurance purposes), or (ii) a storage warehouse.  Throughout the month of April and into May 2018, the Debtor examined potential alternative locations at which to reopen the Business, but no workable premises were discovered.  At the same time, the Debtor evaluated other options such as the conducting of a "warehouse sale" of the remaining Inventory.

11.    The Debtor was still examining its options for bringing this case to a close when the Court issued an order to show cause as to why the instant case should not be dismissed or converted to Chapter 7 [Dkt. No. 139] (the "OSC").  Following the entry of the OSC, the Debtor determined that the most expeditious manner to appropriately administer its remaining assets is a liquidation during which interested purchasers could bid upon the Inventory, either into or in substantial part, as described herein.

12.    To that end, the Debtor responded to the OSC by, among other things, filing its *Notice Of Motion And Motion For Entry Of Order Establishing Bidding And Sale Procedures* [Dkt. No. 143] (the "Bidding Procedures Motion"), pursuant to which it sought approval of the auction and bid procedures that the Debtor will use in connection with the auction process (the "Bidding Procedures").  Following a hearing on June 14, 2018, the Court approved the Bidding Procedures Motion and vacated the OSC.  Among other things, the order [Dkt. No. 148] approving the Bidding Procedures Motion (the "Bidding Procedures Order") set the above-captioned date and time for the hearing on the foregoing Motion.

13.    By the Auction (as that term is defined herein), the Debtor will liquidate the remaining Inventory on the following terms and conditions:

- The Inventory is to be divided into four separate "batches:" (i) Watches; (ii) Jewelry; (iii) Antiques;  and (iv) Gift Items..

- On August 11, 2018, from 11:00 a.m. to 12:00 p.m., the Debtor will conduct an auction for the Inventory (the "Auction") at 141 S. El Camino

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Drive, Suite 210, Beverly Hills, CA 90212.  The Auction will be open to the public.

•    Prior to the Auction, the Debtor will make the Inventory available for inspection to potential purchasers.  The Debtor will hold an open preview of the Inventory at 141 S. El Camino Drive, Suite 210, Beverly Hills, CA 90212 on August 8, 2018 at 10:00 a.m.  to 12:00 p.m. (the "Preview").  Additionally, interested parties that cannot attend the Preview or otherwise wish to see the Inventory on a different date and time may arrange this inspection with the Debtor's representatives directly by contacting the Debtor either by phone (310-273-6660 or 1-800-367-4355) or email (info@davidorgell.com).

•    The Debtor is advertising the Auction and the Preview.  Advertisements are being placed with the Court's website; the National Association of Bankruptcy Trustees; Courtdrive.com; the Danning, Gill, Diamond & Kollitz, LLP website; the Los Angeles Times; and NationalJeweler.com.  A true and correct copy of the language that has been used to advertise the Auction and the Preview is attached hereto as **Exhibit 2**.

•    Prospective purchasers may bid on the Inventory as a whole or, alternatively, any one or more of the "batches."   Stated differently, a purchaser can bid on (i) all of the Inventory or (ii) all items in a particular batch or batches (e.g., all Watches, all Antiques, all Jewelry, or all Gift Items).  Bids may be made at any time prior to, but no later than, the conclusion of the Auction.

•    The minimum bids for the Inventory will be as follows: $140,000 for all of the Inventory or, if the proposed purchaser is interested in bidding on individual batches, (i) $17,000 for all Jewelry, (ii) $63,000 for all Watches, (iii) $38,000 for all Antiques, or (iv) $21,000 for all Gift Items.

•    In addition to the foregoing Inventory, R&S will present for sale a large disassembled Waterford crystal water fountain, which has been in a number of storage boxes for many years and is an item separate from the Watches, Jewelry, Antiques, and Giftware described above.  There is no minimum bid for the disassembled Waterford crystal water fountain.

•    The Inventory will be sold on an "as is" / "where is" basis, with no representations or warranties whatsoever.  It will be sold subject to existing liens, encumbrances, and restrictions, though the Debtor is not aware of any such liens, encumbrances, or restrictions.  All due diligence must be completed by the prospective purchaser prior to the submission of its bid.

•    Concurrent with the submission of its bid, each prospective purchaser must execute an asset purchase agreement in substantially the same form as the *Asset Purchase Agreement* (the "Form APA") that is attached hereto as **Exhibit 1**.  The purchaser must also deliver by cashier's check a deposit (the "Deposit") in an amount of not less than 10% of the minimum bid required for the asset(s) upon which such prospective purchaser is bidding (i.e., $12,200 for all Inventory; $2,000 for Jewelry; $6,300 for Watches; $1,400 for Antiques; $2,500 for Gift Items).  The Deposit will be held in the client trust account of **Sulmeyer**Kupetz, A Professional Corporation, general bankruptcy counsel to the Debtor, pending approval by the Court of the purchase and sale to which the Deposit relates.  The Deposit will be

refundable only in the event of the following: (i) another bidder submits a higher and better bid for the same asset(s), in which case the Deposit will be returned immediately after the Auction (provided, however, that any prospective bidder may elect to serve as a "backup bidder" in case the sale to the winning bidder is not approved, in which case the Deposit will be retained until the hearing on the Motion; (ii) the Court does not approve the sale; or (iii) the Debtor is unable to transfer marketable title within ten (10) business days of entry of the order approving the sale (or such other later date as the parties may agree).

- The minimum bids for the Inventory will be as follows: $140,000 for all of the Inventory or, if the proposed purchaser is interested in bidding on individual batches, (i) $17,000 for all Jewelry, (ii) $63,000 for all Watches, (iii) $38,000 for all Antiques, or (iv) $21,000 for all Gift Items.

- Following the completion of the Auction but prior to the hearing on the foregoing Motion, the Debtor will file a supplement to the Motion (the "Supplement") which (i) lists the bid(s) made at the Auction, (ii) discloses the identity/ies of any bidder(s), and (iii) states the dollar amount of each bid. Approval of the winning bid(s) will be determined at the hearing on the Motion, but in the Supplement the Debtor may recommend that the Court approve certain bid(s).

- Following the entry of the Sale Order(s), the Debtor will close such sale(s) as described in the Form APA.

14.     The Debtor possesses valuable Inventory but has no storefront from which to sell it as part of an ongoing operation.  Liquidating the items piecemeal is unlikely to produce a significant return as the Debtor already conducted its "store closing sale" and the items that comprise the remaining Inventory are those which did not sell during the "store closing" liquidation.  The Debtor believes that the value of the remaining Inventory is largely derived from its potential resale value and, to that end, will be maximized if it sold either in whole or in large batches to businesses that operate in the Debtor's industry and may be interested in reselling these items to their own customers. The Auction procedure contemplated by this Motion is designed to effect this very transaction.

15.     The Debtor is advertising the Auction in both national and local databases frequented by parties interested in purchasing assets in bankruptcy sales, as well as the Los Angeles Times, a nonbankruptcy source, and NationalJeweler.com, a website specifically devoted to news affecting jewelry professionals.  A true and correct copy of the webpage on National Jeweler's website pertaining to its background is attached hereto as **Exhibit 3**.

16.     I respectfully submit that the Court should deem any sale made in connection with the Auction should as having been made in good faith.  Since the Inventory is being sold by way of an

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Auction, the ultimate purchase price of the Inventory will have been tested by the market.

2    Furthermore, the Debtor will take meaningful steps to ensure public awareness of the Auction.

3    Advertisements are being placed in both local sources (LA Times, USBC Central District and DGDK

4    websites) and national sources (NABT, Courtdrive.com, NationalJeweler.com).  The Debtor will hold

5    the Preview so that potential purchasers can evaluate the Inventory and still have time, prior to the

6    Auction, to prepare their bids.  To the extent that party cannot attend the Preview, the Debtor will

7    arrange for private viewings.  Moreover, the Form APA was drafted with an eye toward fairness and

8    impartiality, and cannot be modified to provide any purchaser with a unique "sweetheart" deal.

9         17.    In this case, the liquidation of the Inventory is the final prerequisite to the dismissal of

10   this case.  The Debtor therefore respectfully submits that there is cause to waive the fourteen day stay

11   prescribed by Rule 6004(h) because a waiver of the stay period will expedite the consummation of the

12   sale and, consequently, the resolution of this case.

13        I declare under penalty of perjury under the laws of the United States of America that the

14   foregoing is true and correct.

15        Executed this 25 day of July 2018 at  LOS ANGELES  , California.

16

17        _____

18        Korosh Soltani

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is made as of _____, 2018, by and among R & S Antiques, Inc., a California corporation, debtor and debtor in possession ("Seller"), and _____ ("Buyer").  Seller and Buyer are each referred to herein as a "Party" and collectively as the "Parties."

## AGREEMENT

1.      PURCHASE AND SALE OF PURCHASED ASSETS.

1.1      Agreement to Sell and Purchase Purchased Assets.  Subject to the terms and conditions of this Agreement, and in reliance on the representations, warranties and covenants set forth in this Agreement, Seller agrees to sell, assign, transfer and convey to Buyer at the Closing (as defined in Section 2.2 below), and Buyer agrees to purchase and acquire from Seller at the Closing, all of Seller's right, title and interest in and to all of the Purchased Assets.  The Purchased Assets will be sold, assigned, transferred and conveyed to Buyer (subject to Section 1.3) on the Closing Date "as is" and "where is", with no representations or warranties whatsoever.

1.2      Purchased Assets Defined.  As used in this Agreement, the term "Purchased Assets" means, collectively, all of Seller's right, title and interest in and to those assets expressly selected on Schedule 1.2.

1.3      Asset Transfer; Passage of Title; Delivery.  Upon the Closing, title to all of the Purchased Assets shall pass to Buyer; and Seller shall make available to Buyer possession of all of the Purchased Assets.

2.      PURCHASE PRICE; CLOSING; DEPOSIT; MULTIPLE OFFERS; DUE DILIGENCE.

2.1      Purchase Price.  In exchange of the sale, transfer, conveyance and assignment of all the Purchased Assets to Buyer, Buyer shall pay to Seller the consideration described in Section 2.3 below.

2.2      Closing.  The consummation of the purchase and sale of the Purchased Assets contemplated hereby (the "Closing") shall take place no later than ten (10) business days following the entry of an order by the Bankruptcy Court approving the purchase and sale contemplated under this Agreement, or such other date as mutually agreed upon by Buyer and Seller.  The date on which the Closing shall occur is referred to herein as the "Closing Date." The Closing shall be effective for all purposes as of 11:59 p.m. on the Closing Date.

2.3      Purchase Price Components.  In consideration for the Purchased Assets, Buyer shall pay to Seller the total purchase price of _____ dollars ($_____.00) (the "Purchase Price").  The Purchase Price shall be comprised of the following components: (i) a deposit in the amount of $_____.00 (the "Deposit"), and (ii) a cash payment equal to the difference between the Deposit and the Purchase Price (the "Balance").

2.4     <u>Deposit</u>.

(a)     Concurrent with the execution of this Agreement, Buyer shall deliver the Deposit to either (i) Seller or (ii) SulmeyerKupetz, A Professional Corporation ("<u>SK</u>"), general bankruptcy counsel to Seller.  <u>The Deposit shall be held in trust by SK pending entry of an order by the Bankruptcy Court approving the purchase and sale contemplated by this Agreement. Following entry of such order, the Deposit shall be applied toward the Purchase Price.</u>

(b)     Except as expressly provided in this Agreement, if Buyer should fail to consummate the purchase of the Purchased Assets, the Deposit shall be completely and absolutely forfeited to Seller, and Seller shall retain the Deposit as liquidated damages for such failure.  Buyer and Seller acknowledge that the Deposit represents a fair and reasonable estimation of the damages Seller would suffer in the event Buyer fails to consummate the Sale in accordance with the Agreement.

(c)     The Deposit shall be refundable only in the event of the following:

(i)     Another prospective purchaser submits a higher and better offer for the same asset(s), in which case the Deposit shall be immediately returned to the Buyer (provided, however, that Buyer may elect to serve as a "backup bidder," in case the sale to the higher bidder is not approved by the Bankruptcy Court, in which case the Deposit shall be retained until the hearing before the Bankruptcy Court);

(ii)     The Bankruptcy Court does not approve the sale of the Purchased Assets to Buyer; or

(iii)     Seller is unable to transfer marketable title within ten (10) business days of entry of the order approving the sale (or such other later date as the parties may agree).

2.5     <u>Multiple Offers</u>.  Buyer acknowledges that Seller may have received multiple offers for the Purchased Assets and Seller reserves the right to choose in its sole discretion which agreement to submit to the Bankruptcy Court for approval.

2.6     <u>Due Diligence</u>.  Buyer acknowledges that Buyer has been afforded the opportunity to perform, and has so performed, all inspections, investigations and/or other due diligence relating to the Purchased Assets upon which Buyer will rely in determining whether to purchase the Purchased Assets.  Buyer furthermore acknowledges that Buyer accepts the Purchased Assets strictly in its "as-is"/"where-is" condition.

3.     <u>NO REPRESENTATIONS AND WARRANTIES RE: PURCHASED ASSETS.</u>

3.1     By this Agreement, Seller agrees to convey any and all of its interests in the Purchased Assets to Buyer "as is" and "where is", with no representations or warranties whatsoever, and, by way of illustration and not of limitation, expressly disclaims any representation or warranty as to merchantability, fitness or use.

       3.2     AS-IS SALE; DISCLAIMERS; RELEASE. IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

       3.3     BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE PURCHASED ASSETS "AS IS, WHERE IS, WITH ALL FAULTS."  BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PURCHASED ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN.  BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE PURCHASED ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

4.     CLOSING OBLIGATIONS.

       4.1     Buyer's Closing Obligations.  At the Closing, Buyer shall deliver to Seller the following:

       (a)     Payment of the Balance to Seller by wire transfer or cashier's check; and

       (b)     Such other documents, instruments and agreements as Seller may reasonably request.

       4.2     Seller's Closing Obligations.  At the Closing, Seller shall deliver to Buyer the following:

       (a)     The Purchased Assets in accordance with Section 1.3; and

       (b)     Such other documents, instruments and agreements as Buyer may reasonably request.

5.     MISCELLANEOUS.

       5.1     Expenses.  Except as otherwise provided herein, each of the parties hereto shall bear its own expenses (including without limitation attorneys' fees) in connection with the negotiation and consummation of the transaction contemplated hereby.

5.2 <u>Notices</u>.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be personally or sent by certified or registered United States mail, postage prepaid, or sent by nationally recognized overnight express courier and addressed as follows:

(a)    If to Seller:

R & S Antiques, Inc.

_____

_____

Attn:  Korosh Soltani, Vice President

Fax: _____

Email: _____

<u>With a copy to:</u>

**Sulmeyer**Kupetz, A Professional Corporation

333 Hope Street, 35th Floor

Los Angeles, CA 90071

Attention:  Victor A. Sahn, Esq.

Fax: (213) 629-4520

Email: vsahn@sulmeyerlaw.com

(b)    <u>If to Buyer:</u>

_____

_____

_____

Attention: _____

Fax: _____

Email: _____

<u>With a copy to:</u>

_____

_____

_____

Attention:  _____

Fax: _____

Email: _____

Any such Notices shall be deemed to have been duly given and effective: (i) upon receipt if delivered in person; or (ii) on the date of machine transmittal (except if sent after 5:00 p.m. recipient's time, then the Notice shall be deemed given at 9:00 a.m. on the next business day) when electronically transmitted by facsimile or email; or (iii) one day after deposit with a national overnight delivery service; or (iv) three days after deposit with the United States Post Office by certified mail, return receipt requested, postage prepaid.

Any party to whom Notices are to be sent pursuant to this Agreement may from time to time change its address, facsimile number, or email address for future communication hereunder by giving Notice in the manner prescribed herein to all other parties named in this Section 5.2, provided that the change shall not be effective until five (5) business days after the Notice of change has been given.

5.3     Entire Agreement.  This Asset Purchase Agreement and Schedule 1.2 hereto (which is incorporated herein by reference) and any agreements to be executed and delivered in connection herewith together constitute the entire agreement and understanding between the parties and there are no agreements or commitments with respect to the transactions contemplated herein except as set forth in this Agreement.  This Agreement supersedes any prior offer, agreement or understanding between the parties with respect to the transactions contemplated hereby.

5.4     Amendment; Waiver.  Any term or provision of this Agreement may be amended only by a writing signed by Seller and Buyer.  The observance of any term or provision of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound by such waiver.  No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

5.5     Execution in Counterparts.  For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

5.6     Benefit and Burden.  This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns.

5.7     Governing Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law.

5.8     Severability.  If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

*[Signature Page Immediately Following]*

**IN WITNESS WHEREOF**, Buyer and Seller executed and delivered this Agreement by their duly authorized representatives as of the Effective Date.

**SELLER:**                                   **BUYER:**

**R & S Antiques, Inc.**, Debtor In Possession      _____


By:_____      By:_____

## **SCHEDULE 1.2**

### **Purchased Assets**

(Check all that apply.  If purchasing all Inventory, check All Jewelry,
All Watches, All Antiques, and All Gift Items)

☐ ALL JEWELRY

☐ ALL WATCHES

☐ ALL ANTIQUES

☐ ALL GIFT ITEMS

☐ WATERFORD CRYSTAL FOUNTAIN

EXHIBIT 2

## NOTICE OF AUCTION OF JEWELRY, WATCHES, ANTIQUES, AND GIFTWARE

**On August 11, 2018, from 11:00 a.m. to 12:00 p.m., at 141 S. El Camino Drive, Suite 210, Beverly Hills, CA 90212,** Chapter 11 debtor in possession R & S Antiques, Inc., doing business as David Orgell ("R&S"), will conduct an auction (the "Auction") of all David Orgell inventory remaining following the closing of the David Orgell's Rodeo Drive retail location (the "Inventory"). Participants may park in nearby City of Beverly Hills parking lot(s) or on the street. All persons interested in attending the Auction will be required to present government-issued identification before being admitted therein.

### Assets for Sale

The Inventory is comprised of the following items, which are divided into four "batches:" (i) Watches (and watch straps); (ii) Jewelry; (iii) Antiques, and (iv) Giftware. A complete list of the Inventory is available at: http://bit.ly/Orgell. Pictures of the Watches and Jewelry are available at: http://bit.ly/OrgellPhoto (note that some of the photographs are representative of the actual items available for sale, and not pictures of the items themselves). In addition to the foregoing Inventory, R&S will present for sale a large disassembled Waterford crystal water fountain, which has been in a number of storage boxes for many years and is an item separate from the Watches, Jewelry, Antiques, and Giftware described above.

The Inventory is valued at approximately $610,000 at cost. The four "batches" of Inventory are separately valued as follows: (i) Jewelry is approximately $102,000 at cost; (ii) Watches (and watch straps) are approximately $315,000 at cost; (iii) Antiques are approximately $68,000 at cost; and (iv) Giftware is approximately $125,000 at cost.

Prospective purchasers may bid on the Inventory as a whole or, alternatively, any one or more of the "batches." Stated differently, a purchaser can bid on (i) all of the Inventory or (ii) all items in a particular batch or batches (e.g., all Watches, all Antiques, all Jewelry, or all Giftware) as separately listed above.

### Minimum Bids

The minimum bid(s) for the Inventory are as follows:
- $122,000 for all of the Inventory;
- $20,000 for all Jewelry;
- $63,000 for all Watches (and watch straps);
- $14,000 for all Antiques; and
- $25,000 for all Giftware.

There is no minimum bid for the disassembled Waterford crystal water fountain.

### Bid Deadline

Bids may be made at any time prior to, but no later than, 12:00 p.m. on August 11, 2018. Bids may be made in person at the Auction or via-email at info@davidorgell.com.

JDB\ 2628104.5

## Asset Purchase Agreement

Concurrent with the submission of its bid, each prospective purchaser must execute an asset
purchase agreement (the "APA") that is substantially similar to the asset purchase agreement that
is available at: http://bit.ly/Orgell-Agreement.  Copies of the APA will also be available at the
Auction.

## Deposit

Concurrent with the submission of its bid, each prospective purchaser must also deliver by
cashier's check a deposit (the "Deposit") in an amount of not less than 10% of the minimum bid
required for the asset(s) upon which such prospective purchaser is bidding (i.e., $12,200 for all
Inventory; $2,000 for Jewelry; $6,300 for Watches; $1,400 for Antiques; $2,500 for Giftware).
The Deposit will be held in the client trust account of **Sulmeyer**Kupetz, A Professional
Corporation, general bankruptcy counsel to R&S, pending approval by the Bankruptcy Court of
the purchase and sale to which the Deposit relates.

The Deposit will be refundable only in the event of the following: (i) another bidder submits a
higher and better bid for the same asset(s), in which case the Deposit will be returned
immediately after the Auction (provided, however, that any prospective bidder may elect to serve
as a "backup bidder" in case the sale to the winning bidder is not approved, in which case the
Deposit shall be retained until the hearing); (ii) the sale to the bidding party is not approved by
the U.S. Bankruptcy Court at the August 16, 2018 hearing; or (iii) R&S is unable to transfer
marketable title within ten (10) business days of entry of the order approving the sale (or such
other later date as the parties may agree).

## Bankruptcy Court Approval

The sale is subject to Bankruptcy Court approval, which approval will be obtained at a hearing
on August 16, 2018 at 10:00 a.m. in Courtroom 1375 of the U.S. Bankruptcy Court, 255 East
Temple Street, Los Angeles, California 90012, the Honorable Julia W. Brand presiding.

## Due Diligence

R&S will make the Inventory available for inspection to potential purchasers.  R&S will hold an
open preview of the Inventory on August 8, 2018 from 10:00 a.m. to 12:00 p.m. at 141 S. El
Camino Drive, Suite 210, Beverly Hills, CA 90212 (the "Preview").  Participants may park in
nearby City of Beverly Hills parking lot(s) or on the street.  All persons interested in attending
the Preview will be required to present government-issued identification before being admitted
therein.

Additionally, interested parties that cannot attend the Preview or otherwise wish to see the
Inventory on a different date and time may arrange this inspection with R&S's representatives
directly by contacting R&S either by phone (310-273-6660 or 1-800-367-4355) or email
(info@davidorgell.com).

All items will be sold on an "as is" / "where is" basis, with no representations or warranties whatsoever.  They will be sold subject to existing liens, encumbrances, and restrictions, although there are none that R&S knows of at this time.  All due diligence must be completed by the prospective purchaser prior to the submission of its bid.

### Overbids

At 12:00 p.m. on August 11, 2018, at the Auction, R&S will announce the highest bid(s).  To the extent that multiple parties bid on the Inventory, any of the four "batches," or the Waterford crystal fountain, R&S will conduct a live auction so as to provide parties who were outbid with a chance to submit higher and better bids.  Overbids at the live auction will be in increments of not less than $5,000 over the prior bid submitted.

EXHIBIT 3

Delivering the news jewelers need since 1906

About Us // Contact Us // Follow Us:   



SEARCH

**SUBSCRIBE**

Independents    Majors    Diamonds & Gems    Watches    Fashion    Galleries    The Magazine

10X Blog

# About Us

Since 1906, *National Jeweler* has been the must-read news source for smart jewelry professionals. From market analysis to emerging jewelry trends, we cover the important industry topics vital to the everyday success of jewelry professionals worldwide.

*National Jeweler* delivers breaking news at www.nationaljeweler.com, and via our daily e-newsletter, website and other specialty publications, such as The State of the Majors.

Here, our readers--jewelry retailers, designers, buyers, manufacturers, and suppliers--find award-winning editorial coverage, in-depth analysis and expert contributors every day.

*National Jeweler* is published by Jewelers of America, the leading nonprofit jewelry association in the United States.

**Subscribe online today**.

## Subscribe Now

Get daily news and updates from the industry's premier news source.

**Go Now »**

### BROUGHT TO YOU BY

Are You Believing in These Shipping Myths?

The Perfect Moment, Realized

A Helpful Tip to Plan Your JCK Las Vegas Itinerary

### FROM THE 10X BLOG                    Go Now »



The Best Haute Joaillerie Instagram Snaps

July 6, 2018

By Ashley Davis

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document entitled (*specify*):  ***NOTICE OF MOTION AND MOTION FOR ORDER: (1) APPROVING SALE(S) OF ASSETS PURCHASED AT AUCTION; (2) DETERMINING THAT PURCHASER(S) IS/ARE GOOD FAITH PURCHASER(S); AND (3) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF KOROSH SOLTANI IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* July 26, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jason Balitzer**    jbalitzer@sulmeyerlaw.com,
  jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- **Alan F Broidy**    alan@broidylaw.com, sherrie@broidylaw.com
- **Alvin Mar**    alvin.mar@usdoj.gov
- **Sabari Mukherjee**    notices@becket-lee.com
- **Victor A Sahn**    vsahn@sulmeyerlaw.com,
  agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com
- **Michael A Shakouri**    mshakouri@goodkinlynch.com, paralegal@goodkinlynch.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On *(date)* July 26, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382 / Courtroom 1375
Los Angeles, CA 90012

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* July 26, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 26, 2018 | Kelli Mccamey | /s/ Kelli Mccamey |
|---|---|---|
| Date | Printed Name | Signature |

KM\ 2616757.1 7/26/2018 (10:53 AM) This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                        **F 9013-3.1.PROOF.SERVICE**

2. **SERVED BY U.S. MAIL**:

R & S Antiques, Inc.
262 North Rodeo Drive
Beverly Hills, CA 90210-5104

Employment Development Dept.
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Unit, MS:A-340
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

L.A. County Tax Collector
Bankruptcy Unit
PO Box 54110
Los Angeles, CA  90054-0110

Los Angeles City Clerk
PO Box 53200
Los Angeles, CA  90053-0200

Securities & Exchange Commission
444 South Flower St., Ste. 900
Los Angeles, CA  90071-2934

AR Distribution
Attn: Ryan Davison
149 South Barrington Avenue, No. 241
Los Angeles, CA  90049-2934

AT&T
PO Box 9039
South San Francisco, CA 94083-9039

Armin Strom, AG
Bozingenstrasse 46
Biel
Switzerland 2502

Baume & Mercier
Division of Richemont North America
3 Enterprize Drive
Shelton, CT 06484-7620

Birch
Birch Communications
PO Box 105066
Atlanta, GA 30348-5066

Blue Shield of California
PO Box 272540
Chico, CA 95927-2540

Bowie Insurance Group, Inc.
21 North Hanson Street, Suite 105
Easton, MD 21601-3156

Brink
580 Fifth Avenue
New York, NY 10036-4725

C.W.J. Brands
1551 Sawgrass Corporate Parkway
Suite 109
Fort Lauderdale, FL 33323-2828

Cache Limoges
Attn:  Bonnie Fratis
1933 South Broadway, No. 968
Los Angeles, CA  90007-4501

Carr's Trophies & Engraving
11660 Pico Boulevard
Los Angeles, CA 90064-2909

Carrera y Carrera
Carrera y Carrera Americas Inc.
686 Stoneleigh Avenue, Suite 1B
Carmel, NY 10512-3932

Ceridian
3311 East Old Shakopee Road
Minneapolis, MN 55425-1640

Christofle
41 Madison Avenue, Sixth Floor
New York, NY 10010-2275

Chronoswiss
Loewenstrasse, #A16
Lucerne
Switzerland 6004

Clerc Americas, Inc.
1444 Biscayne Blvd Ste 201
Miami, FL  33132

Corum
1551 Sawgrass Corporation Parkway
Suite 109
Fort Lauderdale, FL 33323-2828

D'Argenta
Attn:  Jorge Abraham
Piramide 3
Alce Blanco, Naucalpan
Edo Mexico DF  53370

DKSH Luxury
9-D Princess Road
Lawrence Township, NJ 08648-2318

Daum, USA
368 Passaic Avenue
Fairfield, NJ 07004-2008

Davis Graham & Stubbs LLP
Ericka F. Houck Englert, Esq.
1550 Seventeenth St., Ste. 500
Denver, CO  80202-1500

Direct TV
PO Box 105249
Atlanta, GA 30348-5249

Envoy Trading LLC
37 Vantis Drive
Aliso Viejo, CA 92656-2600

KM\ 2616757.1 7/26/2018 (10:53 AM) This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central
District of California.

*June 2012*                                                                                        **F 9013-3.1.PROOF.SERVICE**

Ervin Cohen & Jessup LLP
Attn: David N. Tarlow, Esq.
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212-2945

Fine Line Media, LLC
65 Saint James Place
Ardmore, PA 19003-2407

Guardian Insurance
PO Box 824404
Philadelphia, PA 19182-4404

Health Net
PO Box 9103
Van Nuys, CA 91409-9103

Lenox Corporation
PO Box 643980
Cincinnati, OH 45264-0309

Moser
PO Box 1353
Sterling, VA 20167-8436

Norman Silverman Diamonds
606 South Olive Street, Suite 2450
Los Angeles, CA 90014-1634

Perrelet USA Corp.
1444 Biscayne, Suite 201
Miami, FL 33132-1422

Riedel
Crystal of America, Inc.
95 Mayfield Avenue
Edison, NJ 08837-3820

Sistems Integrations, Inc.
606 South Hill Street, Suite 1009
Los Angeles, CA 90014-1766

Southern California Edison
PO Box 300
Rosemead, CA 91772-0001

Tradema of America, Inc.
7900 Glades Road, Suite 200
Boca Raton, FL 33434-4188

United Parcel Service
PO Box 894820
Los Angeles, CA 90189-4820

FedEx
PO Box 7221
Pasadena, CA 91109-7321

First Data Merchant Services LLC
4000 Coral Ridge Dr
Pompano Beach, FL 33065-7614

Gumbiner, Savett, Finkel
1723 Cloverfield Boulevard
Santa Monica, CA 90404-4017

Kenro Industries
393 Jericho Turnpike, Suite 2
Mineola, NY 11501-1205

Lifetime Brands
12 Applegate Drive
Trenton, NJ 08691-2342

Nest Fragrance
3 East 54th St, 5th Fl
New York, NY  10022-3131

Orrefors Kosta Boda Inc.
PO Box 510864
Philadelphia, PA 19175-0864

Rahim Soltani
10380 Wilshire Boulevard, Suite 602
Los Angeles, CA 90024-4744

Robert A. Weinberg Law Offices
Robert A. Weinberg, Esq.
18034 Ventura Blvd., Ste. 511
Encino, CA  91316-3516

Sloane Two Rodeo, LLC
c/o Daniel L. Goodkin, Esq.
Goodkin & Lynch
1800 Century Park East, Suite 10th Floor
Los Angeles, CA 90067-2519

Staple Credit Plan
PO Box 78004
Phoenix, AZ 85062-8004

Uline
PO Box 88741
Chicago, IL 60680-1741

Attn: Alvin Mar
United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

FedEx Corporate Services Inc.
3965 Airways Blvd, Module G, 3rd Floor
Memphis, TN  38116-5017

Goodkin & Lynch, LLP
Attn: Daniel L. Goodkin, Esq.
1800 Century Park East, 10th Floor
Los Angeles, CA 90067

Hartford Insurance
PO Box 660916
Dallas, TX 75266-0916

Lalique North America, Inc.
25 Branca Road
East Rutherford, NJ 07073-2121

Liu Li Gong Fang USA, Inc.
Liuli USA
398 Lemon Creek Drive, Suite F
Walnut, CA 91789-2649

New Time SRL
13 Via Per San Gennaro
Gragnano
Ulcca, Italy 55012

Panache Productions, Inc.
1875 Century Park East, 7th Fl.
Los Angeles, CA  90067

Rahim Soltani
262 North Rodeo Drive
Beverly Hills, CA  90210-5104

Seiko Corporation of America
1111 MacArthur Boulevard
Mahwah, NJ 07430-2038

Soltani Oriental Rugs & Antiques
10380 Wilshire Boulevard, Suite 602
Los Angeles, CA 90024-4744

State Board of Equalization
Account Information Group, MIC: 29
PO Box 942879
Sacramento, CA 94279-0029

Ulysse Nardin Inc.
7900 Glades Road, Suite 200
Boca Raton, FL 33434-4188

W Luxury Group LLC
12555 Biscayne Boulevard, Suite 852
Miami, FL 33181-2522

KM\ 2616757.1 7/26/2018 (10:53 AM) This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central
District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

WWRD US, LLC
c/o Fiskars Brands Inc
Attn:  Kelly Peterson
7800 Discovery Dr.
Middleton, WI  53562

WWRD US, LLC
PO Box 1454
Belmar, NJ  07719-1454

American Express Bank, FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA  19355-0701

Armin Strom, AG
Bozingenstrasse 46
Biel
Switzerland 2502

Samira Barvala
710 North Elm Drive
Beverly Hills, CA  90210-3423

Stacy Gerowitz
234 So Tower Dr, No 9
Beverly Hills, CA  90211-3453

Jim Harrington
9340 Hazen Drive
Beverly Hills, CA  90210-1829

Cynthia Kanner
511 Almar Ave
Pacific Palisades, CA  90727-4206

KM\ 2616757.1 7/26/2018 (10:53 AM) This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central
District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**